**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW STOCKOV, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>COSTCO WHOLESALE CORP.,<br><br>          Defendant. | Case No. 1:26-cv-02734<br><br>Hon. Steven C. Seeger |

**PLAINTIFF MATTHEW STOCKOV'S RESPONSE IN OPPOSITION TO
DEFENDANT COSTCO WHOLESALE CORP.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ..............................................................................................................................3

    I.     Plaintiff's Claims Ripened When Costco's Misleading Price Inflation Injured Him .................3

    II.    Plaintiff Suffered Injury in Fact Through Costco's Misconduct....................................................6

    III.   The Complaint States Claims for Relief ...........................................................................................8

        A.    Plaintiff States a Claim Under the Illinois Consumer Fraud Act .............................................8

        B.    Plaintiff States Claims Under Equity .........................................................................................13

    IV.   Plaintiff Seeks Leave to Amend.....................................................................................................15

CONCLUSION...........................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGS Co. Auto Sols. v. U.S. Customs & Border Prot.*,
No. 25-00255 (C.I.T.) ............................................................................................................3

*Amling v. Harrow Indus. LLC*,
943 F.3d 373 (7th Cir. 2019)..................................................................................................4

*In re Aqua Dots Products Liability Litigation*,
654 F.3d 748 (7th Cir. 2011)..................................................................................................7

*Barrientos v. Fitness Member Servs., LLC*,
749 F. Supp. 3d 944 (N.D. Ill. 2024)....................................................................................14

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010)................................................................................................15

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020)..................................................................................................7

*Bueker v. Madison Cnty.*,
2016 IL App (5th) 150282 ....................................................................................................15

*Burks v. Raemisch*,
555 F.3d 592 (7th Cir. 2009)................................................................................................11

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)................................................................................................12

*City of Rockford v. Mallinckrodt ARD, Inc.*,
360 F. Supp. 3d 730 (N.D. Ill. 2019)....................................................................................13

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996)..............................................................................................................8

*Continental Bank v. Meyer*,
10 F.3d 1293 (7th Cir. 1993).......................................................................................... 10, 11

*Curtis v. 7-Eleven, Inc.*,
No. 21-CV-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022)..........................................6

*DOD Techs. v. Mesirow Ins. Servs., Inc.*,
381 Ill. App. 3d 1042 (2008)................................................................................................14

*Euro-Notions Fla., Inc.*, v. *United States*,
  No. 25-00595 (C.I.T.) ....................................................................................................3, 5

*Finch v. Treto*,
  82 F.4th 572 (7th Cir. 2023) .................................................................................................5

*Gagnon v. Schickel*,
  2012 IL App (1st) 120645 ............................................................................................ 4, 14, 15

*Geske v. PNY Techs., Inc.*,
  503 F. Supp. 3d 687 (N.D. Ill. 2020) ...................................................................................6

*Gociman v. Loyola University of Chicago*,
  41 F.4th 873 (7th Cir. 2022) ............................................................................................ 14, 15

*Kahn v. Walmart Inc.*,
  107 F.4th 585 (7th Cir. 2024) .................................................................................6, 8, 10, 12

*Kaiser v. Fleming*,
  315 Ill. App. 3d 921 (2000) .................................................................................................15

*Kaschak v. Bankers Healthcare Grp., LLC*,
  No. 23-CV-15452, 2024 WL 1797925 (N.D. Ill. Apr. 25, 2024) ........................................8

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) ...............................................................................................12

*Lindquist Ford, Inc. v. Middleton Motors, Inc.*,
  557 F.3d 469 (7th Cir. 2009) ...............................................................................................13

*Lirtzman v. Fuqua Indus., Inc.*,
  677 F.2d 548 (7th Cir. 1982) ...............................................................................................15

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002) .................................................................................................6

*Mckenzie v. Prog. Treatment Sols., LLC*,
  No. 25 CV 1768, 2026 WL 636741 (N.D. Ill. Mar. 6, 2026) ..............................................7

*Muir v. Playtex Prods., LLC*,
  983 F. Supp. 2d 980 (N.D. Ill. 2013) ...................................................................................6

*Mulligan v. QVC, Inc.*,
  382 Ill. App. 3d 620 (2008) .................................................................................................12

*Partipilo v. Hallman*,
  156 Ill. App. 3d 806 (1987) .................................................................................................13

iii

*Patterson v. Green Growth Grp., Inc.,*
No. 25-CV-8766, 2026 WL 735188 (N.D. Ill. Mar. 16, 2026)................................................7

*Pickett v. Sheridan Health Care Ctr.,*
610 F.3d 434 (7th Cir. 2010)..............................................................................................11

*Rasgaitis v. Waterstone Fin. Grp., Inc.,*
2013 IL App (2d) 111112.............................................................................................. 10, 11

*In re Recalled Abbott Infant Formula Products Liability Litigation,*
97 F.4th 525 (7th Cir. 2024) ...............................................................................................7

*Rodriguez v. Prog. Treatment Sols., LLC,*
No. 25-CV-1019, 2026 WL 710930 (N.D. Ill. Mar. 13, 2026)................................................7

*Strow v. B&G Foods, Inc.,*
633 F. Supp. 3d 1090 (N.D. Ill. 2022)..................................................................................8

*Toulon v. Continental Casualty Co.,*
877 F.3d 725 (7th Cir. 2017)..............................................................................................11

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)............................................................................................................7

*Trump v. New York,*
592 U.S. 125 (2020)............................................................................................................5

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.,*
309 F.3d 978 (7th Cir. 2002)..............................................................................................3

*V.O.S. Selections, Inc. v. Trump,*
25-00066, ECF No. 88 (C.I.T. May 29, 2026) ......................................................................5

*Wickstrom v. Air Line Pilots Ass'n, Int'l,*
156 F.4th 835 (7th Cir. 2025) .........................................................................................4, 5

**Statutes and Rules**

Fed. R. Civ. P. 9(b) .............................................................................................................8

Fed. R. Civ. P. 15(a)(2) .....................................................................................................15

Illinois Consumer Fraud Act, Ill. Comp. Stat. 510/2.......................................................*passim*

International Emergency Economic Powers Act...............................................................2, 3

**INTRODUCTION**

Plaintiff Matthew Stockov and other Costco members remain loyal to the company due to its commitment to low, stable prices. Famously, its hot-dog-and-drink combo has held its $1.50 price since the 1980s, and its rotisserie chicken has cost $4.99 since 2009—even during an avian flu crisis that dramatically reduced supply. [1] Because they trust Costco's stated commitments to its core pricing philosophy and corollary representations about not passing on certain costs—like tariffs—to consumers, Costco members make ex ante decisions about what to pick up there before leaving their doors for out-of-the-way "Costco trips."

Costco's executives know this. When they say Costco will not raise prices on core items due to tariffs, they know that Costco members believe them. They also know that this trust makes the difference between a consumer buying an item at Costco or elsewhere. And once a Costco member has left the house to trek to a warehouse for certain goods, no reasonable consumer would pull out their phone, pray for reception, compare prices, and leave empty-handed. That is not the nature of anyone's Costco trip. Consequently, when Costco misrepresents its pricing philosophy and tariff surcharges to lure customers to its warehouses, Costco members like Plaintiff suffer injury under consumer protection statutes that ban this deception.

Separate from these misrepresentations, Costco's subsequent decision not to pass through refunds for tariffs to consumers (after passing through tariff costs) forms the basis of separate claims for unjust enrichment and money had and received. Costco's actions constitute double recovery at consumers' expense. The equitable principles underlying these claims prevent unfair windfalls and require Costco to apply equal treatment to its tariff costs and refunds.

---

[1] Chrissy Callahan, *Costco Quietly Makes Changes to Famous $1.50 Hot Dog Combo*, TODAY (Apr. 29, 2026), https://www.today.com/food/news/costco-hot-dog-combo-options-change-rcna342665; Ann Schmidt, *Why Costco's rotisserie chicken has cost the same for 11 years*, FOX BUSINESS (June 9, 2020), https://www.foxbusiness.com/money/costco-rotisserie-chicken-price. All articles attached as Ex. 1.

## BACKGROUND

The well-known key to Costco's success depends in large part on its avowed commitment to keeping its customers' costs down—that philosophy is embedded in its name and was long reflected in many of its business practices.[2] This commitment to lowering consumer prices has attracted legions of loyal Costco members, including Plaintiff Matthew Stockov.

In responding to tariffs purportedly authorized by the International Emergency Economic Powers Act ("IEEPA"), however, Costco's actions strayed from the words of its founding philosophy and the specific representations of its executives. After the federal government imposed IEEPA tariffs in February 2025, Costco claimed to maintain its commitment to holding the line on consumer prices despite tariffs in a widely reported May 2025 earnings call. Compl. ¶¶ 28-29. During that call, a Costco executive admitted that the company increased prices for "discretionary" items like flowers but "held the price" on "key staple items" like "bananas" for members. Mot. Ex. 1 at 27; Compl. at ¶ 29. During the same call, an executive explained that "raising prices is always seen as a last resort" and that the company would "ultimately *increase* our member value compared to the market." *Id.* at 10 (emphasis added); Compl. ¶¶ 28-29.

Consumers like Plaintiff noticed the opposite—they saw their Costco receipts showing much higher prices on key staple items like "milk, eggs, diapers, school snacks, coffee, and toilet paper." Compl. ¶ 30. Compared to competitors, "Costco has hiked higher than most." Compl. ¶ 30. These price increases reflected Costco's passing on tariff costs to consumers in the form of higher prices, despite its statements otherwise. Compl. ¶ 31. Costco's internal data also reflects practices that belie its stated commitment to holding the line on consumer prices despite tariff costs. Even with tariffs increasing the company's costs, Costco's financials reflected increased profit margins.

---

[2] About Us., Costco.com, https://www.costco.com/f/-/about.

Compl. ¶¶ 25-26. Plaintiff maintains that this margin expansion could result only if Costco passed on tariff costs to consumers in a manner inconsistent with its public statements. This contradiction between Costco executives' statements and its pricing decisions forms the basis of Plaintiff's claims under the Illinois Consumer Fraud Act ("ICFA") and other state statutes. Compl. ¶ 50.a.

Plaintiff also asserts equitable claims arising from Costco's subsequent actions to recover tariff refunds from the federal government while refusing to pass through those refunds directly to customers. In November 2025, Costco sued the government to recover IEEPA tariff refunds. Compl. ¶ 32. Four months later, the Court of International Trade ordered refunds on all unlawfully paid IEEPA tariffs after the Supreme Court struck them down. Compl. ¶ 34. The following month, the court issued a similar order in Costco's consolidated case. Order, *AGS Co. Auto Sols. v. U.S. Customs & Border Prot.*, No. 25-00255 (C.I.T. Apr. 17, 2026). The day after the first refund order, Costco's CEO confirmed that it passed on tariff costs to consumers and would *not* offer refunds to its members. Compl. ¶ 38, Mot. Ex. 2 at 4. Instead, he vaguely suggested that Costco would "return this value to our members through lower prices and better value." Compl. ¶ 38; Mot. Ex. 2 at 4.

Shortly after this announcement, Plaintiff filed his complaint. Since then, the federal government has processed at least $23.68 billion in tariff refunds that are set for payment. Decl. of Brandon Lord, *Euro-Notions Fla., Inc.*, v. *United States*, No. 25-00595, ECF No. 34 at 3 (C.I.T. June 10, 2026). Costco argues that Costco has not yet received any tariff refunds, but that is a disputed fact that should be tested through discovery.

**ARGUMENT**

**I. Plaintiff's Claims Ripened When Costco's Misleading Price Inflation Injured Him**

A claim is "unquestionably ripe" when a plaintiff's "harm ha[s] already occurred." *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 984 (7th Cir. 2002). For his ICFA claim, Plaintiff suffered concrete financial harm the moment he purchased a good at Costco that had a

3

price inflated by its tariff misrepresentations. Costco's ripeness argument never grapples with this ICFA harm at all.

Costco's focus on when its full money refund transfers from the government to its bank account misses the mark. At most, this fact might weigh on the magnitude of damages, but it would not "unripen" his mature claims. Future events occurring throughout the lifespan of a litigation often color the allegations, but what separates ripe claims from unripe claims is whether the plaintiff's "alleged harm . . . has occurred" or "not yet come to pass." *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 841 (7th Cir. 2025). The concrete financial harm here occurred at the register, regardless of the date of refunds.

Costco's ripeness argument appears to attack only Plaintiff's unjust enrichment claim. In attacking that claim's ripeness, Costco's preoccupation with government disbursal actions comes closer, but still misses the ripeness mark. While those third-party actions color Plaintiff's unjust enrichment claim, the relevant perfected harm for ripeness is that Costco has "unjustly retained a benefit to the plaintiff's detriment." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. The benefit Costco retained to Plaintiff's detriment was the money Plaintiff already paid in Costco tariff surcharges. To be sure, this unjustness is exacerbated by Costco's receipt of tariff refunds, but this does not change the fact that Plaintiff's claims ripened when Costco took tariff-inflated charges from him at the register.

It is true that a claim is unripe when it "depends on so many future events that a judicial opinion would be advice about remote contingencies," but there is nothing remote or contingent about this harm. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 378 (7th Cir. 2019) (internal quotation mark omitted). Plaintiff footed Costco's tariffs on goods he purchased and wants his money back. But even if Plaintiff must establish Costco's concrete entitlement to tariff refunds for his equitable claims to ripen, that also has already occurred. As Costco acknowledges, the CIT "has ordered that

4

refunds occur," Mot. at 5, and CBP has processed $23.68 billion in refunds. Decl. of Brandon Lord, *Euro-Notions Fla., Inc.*, v. *United States*, No. 25-00595, ECF No. 34 at 3 (C.I.T. June 10, 2026). At least a portion of Costco's refunds have likely been processed in this batch. The government's appeal does not complicate this. It has indicated that the appeal does not apply to unliquidated tariffs and would not apply to Costco because it is not in the group of "importers who have not sued" the government. Defendants' Mot. to Amend Order, *V.O.S. Selections, Inc. v. Trump*, 25-00066, ECF No. 88 at 3 (C.I.T. May 29, 2026).

Even if this Court adopted Costco's most cramped reading of the allegations, Plaintiff's claims would still be fully ripe when compared with Costco's cited cases *Trump v. New York*, 592 U.S. 125 (2020), and *Finch v. Treto*, 82 F.4th 572 (7th Cir. 2023). There, plaintiffs sued government officials based on early policy proposals that caused no harm—in *Trump* because "the policy may not prove feasible to implement in any manner whatsoever, let alone in a manner substantially likely to harm any of the plaintiffs," 592 U.S. at 132, and in *Finch* because the plaintiffs had suffered "*no costs*" and had challenged a "nonfinal . . . rule" that the government had "since withdrawn," 82 F.4th at 579. Here, Plaintiff suffered harm (or "costs") the moment he purchased goods with inflated prices based on Costco's secret tariff surcharges.

Nor does Costco's undisclosed plans on how it will use the refunds affect the inquiry. *Wickstrom* instructs that claims reflecting harms that have "come to pass" do not lose ripeness if potential future events might ameliorate those harms. 156 F.4th at 841. There, plaintiffs sued their union after they lost their jobs. *Id.* at 840. The union argued that the claims were unripe because pending grievances could undo the harm of termination. *Id.* at 840-41. The court rejected this because the terminations had already "occurred," which established a "concrete, not abstract" dispute. *Id.* So Costco's inchoate, vague gestures at remedial action cannot undo the "concrete" dispute here.

## II. Plaintiff Suffered Injury in Fact Through Costco's Misconduct

Plaintiff's concrete financial harm at the Costco register also establishes his standing. The Seventh Circuit has recognized "no dispute" about Article III standing where purchasers "have been injured by paying an inflated price" where the price inflation directly results from unlawful conduct. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir. 2002). As in antitrust, the fact that defendants post firm prices does not absolve them of liability for unlawful price inflation—either through an antitrust violation or a misleading statement under the ICFA. There's simply no benefit of a shady bargain where one side is breaking the law in a way that harms the other. Consumers are entitled to an honest marketplace, and they suffer injuries when defendants deprive them of that because misleading prices exacerbate "sunk costs" and may force consumers "to spend more time and effort in comparison shopping." *Kahn v. Walmart Inc.*, 107 F.4th 585, 602-03 (7th Cir. 2024).

As explained above, customers choose to buy at Costco because of its pricing philosophy and statements that increasing prices is a "last resort" and that tariff costs would not be passed on for "staple items." But those statements were deceptive: the Complaint explains that Costco members noticed after their purchases that its price increases during the tariff regime outpaced competitors. Compl. ¶ 31 ("Costco has hiked higher than most."). A plaintiff alleges economic injury where "if he had known that . . . [the] claim was false, he would not have purchased." *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013). That is the essence of the harm here.

This Court recognized just such "economic injury" in *Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022). *Curtis* held that a plaintiff established "economic injury" when "she made an economic decision based on misinformation" to buy a product that "she would not have purchased" or "would have been willing to pay less for them." *Id.*; *see Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 697 (N.D. Ill. 2020) (finding standing for "economic injury by overpaying"). That again reflects Plaintiff's injury. If Costco represented that it was incorporating

6

tariffs into its prices, he would not have made the ex ante decision to take an inconvenient "Costco trip" and would have refrained from buying imported staples or gone to another retailer.

*In re Recalled Abbott Infant Formula Products Liability Litigation*, 97 F.4th 525 (7th Cir. 2024), does not decree a different outcome because it did not overrule this precedent and must be read in harmony with the rule that consumer "financial injury creates standing," articulated in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011). *Id.* at 751. Reading these cases together, courts in this District have identified the "critical issue" as whether "the plaintiffs' economic injury was 'hypothetical or conjectural'": *Abbott Infant Formula* failed because the plaintiffs did not allege that the misconduct actually contaminated their products—just potential that it might have. *Rodriguez v. Prog. Treatment Sols., LLC*, No. 25-CV-1019, 2026 WL 710930, at *3 (N.D. Ill. Mar. 13, 2026). This "potential risk of contamination is not enough to confer standing"—the plaintiff must "plead that the products they purchased were among those exposed" to the wrongful practice. *Mckenzie v. Prog. Treatment Sols., LLC*, No. 25 CV 1768, 2026 WL 636741, at *3 (N.D. Ill. Mar. 6, 2026); *Patterson v. Green Growth Grp., Inc.*, No. 25-CV-8766, 2026 WL 735188, at *4 (N.D. Ill. Mar. 16, 2026) (same). Here, Plaintiff flatly alleges that his purchases had prices contaminated by pass-throughs of unlawful tariffs. This is the certain, not potential "financial injury" of *Aqua Dots*. 654 F.3d at 751.

Apart from the ICFA injury, the complaint also alleges straightforward injury for the equitable claims. Claims for "unjust enrichment" assert injuries arising from violations of a plaintiff's traditional private rights. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020). The invasion of these traditional rights through "unjust enrichment" are "enough to show injury-in-fact." *Id.* The Supreme Court has explained that the "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021). Under *Bryant*, unjust enrichment definitionally meets this requirement. 958 F.3d at 624. After all, "monetary harms readily qualify as concrete injuries." *TransUnion*, 594 U.S. at 414.

### III. The Complaint States Claims for Relief

On a motion to dismiss, courts must "treat the complaint's factual allegations as true and draw every factual inference in the plaintiff's favor." *Kahn v. Walmart Inc.*, 107 F.4th 585, 593 (7th Cir. 2024). Plaintiffs must "allege only enough facts to . . . allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 594. ICFA claims subject to Rule 9(b) need only "describ[e] the who, what, when, where, and how" of the violation. *Id.*

#### A. Plaintiff States a Claim Under the Illinois Consumer Fraud Act

"The ICFA is a regulatory and remedial statute intended to protect consumers." *Kaschak v. Bankers Healthcare Grp., LLC*, No. 23-CV-15452, 2024 WL 1797925, at *11 (N.D. Ill. Apr. 25, 2024). As such, it "should be liberally construed." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 503 (1996). To state a claim, a plaintiff must allege: "(1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately caused by the deception." *Strow v. B&G Foods, Inc.*, 633 F. Supp. 3d 1090, 1098 (N.D. Ill. 2022).

##### 1. Reasonable Consumers and the "Costco Trip"

Perhaps the most important aspect of faithful application of the ICFA and other consumer fraud statutes is the careful calibration of the "reasonable consumer" standard to the elements. *See Kahn*, 107 F.4th at 594-97. "Reasonable consumer behavior is not a matter of pure economic theory." *Id.* at 595. It instead reflects "how consumers actually behave" as they process imperfect and incomplete information with "limited time, computational skills, and memories." *Id.* In this specific context, courts pay close attention to "retail settings" and practices that are "engineered to influence consumers in ways they (meaning we) do not fully anticipate or appreciate." *Id.* Additionally, courts recognize that the retailer can "control the format of information" and "the setting within which the market transactions occur." *Id.*

8

Costco's control over its retail setting and consumer information shapes every aspect of Plaintiff's claims. A "Costco trip" is a special, intentional errand: warehouses are not conveniently located and Costco does not stock the same variety of goods as normal grocery stores—customers cannot comparison shop *within* Costco, because they often carry just one type of a particular good. Mot. Ex. 1 at 26 (Costco's CFO acknowledging its "limited SKU counts" were key factor in its ability to "adapt to the changing environment" of tariffs). Costco also maintains strict control over consumer information by not advertising at all, going so far as to call the practice "evil."[3] Customers thus have little idea what the price of any particular item in Costco is before entering the warehouse, including the prices "key staple items" like "bananas." Mot. Ex. 1 at 27. *Cf. Arrested Development: Charity Drive* ("I mean it's one banana, Michael. What could it cost, $10?").[4] Costco thus uses strategic statements in earnings calls to gain "earned media" and communicate its pricing practices to its customers, including its commitment to absorbing certain costs like tariffs. If there were any doubt, consider that Costco uses these earnings calls to proclaim the importance of its famous $1.50 hot dog and $4.99 rotisserie chicken.[5] This fact-specific context demonstrates precisely how Costco's statements deceived and harmed the reasonable Costco shopper.

## 2. Deceptive Act

Applying this standard, Costco's statements are deceptive. A deceptive act is any statement that "creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. 510/2(a)(12). Whether confusion or misunderstanding arises depends on "the 'totality of the information'

---

[3] Kate Taylor, *Costco has a brilliant strategy that allows it to get great press, save money, and pay workers $15 per hour*, BUSINESS INSIDER (Mar. 19, 2019), https://www.businessinsider.com/costco-keeps-costs-low-pay-high-no-pr-2019-3.
[4] https://www.youtube.com/watch?v=sTswXAFA18Y.
[5] Dominick Reuter, *Costco says its $1.50 hot dogs and $4.99 chickens are helping members stomach the annual fee increase*, BUSINESS INSIDER (Sept. 26, 2024), https://www. businessinsider.com/costco-hot-dog-chicken-deals-help-membership-fee-increase-2024-9.

9

available to the consumer." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024). Here, Costco said it was not passing on tariffs for key staple items, but its hikes on "milk, eggs, diapers, school snacks, coffee, and toilet paper" and increased margins showed the opposite. Compl. ¶ 30. That is plain deception. Contrary to Costco, the fact that Plaintiff bought those items for the prices posted at Costco does not "dispel[] as a matter of law [the earlier] deception" that reasonable consumers relied on in making the ex ante decision to leave for a "Costco trip." *Kahn*, 107 F.4th at 598.

*Kahn* rejected the argument that a plaintiff's final decision to buy at a posted price launders the price deception. It explained that this argument "would require unreasonable efforts . . . to protect" from deception shoppers who "lack the time" to compare prices, especially after already making ex ante shopping choices. *Id.* at 599. That is particularly true here where consumers must trust Costco to have the best price without the benefit of advertised prices—especially when it says staples are tariff-free—and where consumers incur real "sunk costs" by heading to Costco. *Id.* at 602. It's worth considering exactly how Costco's unreasonable argument would require consumers to "spend more time and effort in comparison shopping" *after* they have already chosen to go there. *Id.* at 603. In its mind, consumers must go to Costco, look at staple prices, pick up their phones, hope they have reception in the cavernous warehouse, compare prices with other stores, and make an extra trip if they find a better bargain. As *Kahn* put it: "Who does that?" *Id.* at 599.

Costco's claim that "forward-looking statements" per se fail is also wrong. *Rasgaitis v. Waterstone Fin. Grp., Inc.*, 2013 IL App (2d) 111112, rejected this. Rather than apply a hard-and-fast rule, *Rasgaitis* reasoned that the test "depends on all the facts and circumstances of a particular case" and is often not suitable grounds to dismiss. *Id.* ¶ 42. It held that forward-looking statements about investments were specific enough to draw them away from optimistic "matters of opinion" to actionable "representations of fact." *Id.* ¶ 43. Compare this holding with Costco's case *Continental Bank v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993), which held that a vague statement about future

10

profits was not actionable because lack of specificity rendered it merely "an opinion that the partnership . . . would produce a profit"—permissible puffery under the ICFA. *Id.* at 1299. Costco ignores *Continental Bank*'s explanation—consistent with *Rasgaitis*—that the forward-looking statement that the enterprise was "structured so as to make a profit" would have been deceptive if it contained "specificity" about the structure. *Id.* Here, Plaintiff alleges that Costco provided specific, untrue pricing statements—that it was not raising prices on key staple items due to tariffs. *Toulon v. Continental Casualty Co.*, 877 F.3d 725 (7th Cir. 2017), is even further off-mark. It found no deception where the statement "made clear to applicants that Continental could change the premium rates *without limitation.*" *Id.* at 739 (emphasis added). Here, Costco specifically limited tariff increases to "discretionary," luxury items and ruled out pass-throughs on "staples." Mot. Ex. 1 at 27.

### 3. Intent

"[W]hether bad intent may be inferred . . . is inherently fact-dependent" and thus not appropriate for ultimate resolution on the pleadings. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 444 (7th Cir. 2010); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). In the context of its unique business, Costco's argument that it does not intend for its customers to rely on widely reported news about its earnings calls is a factual dispute inappropriate for determination now. Again, Costco uses earnings calls to communicate its pricing policy to customers in lieu of traditional advertising. Instead, it relies on "earned media" interest in those calls and other public-facing statements. It has admitted, "We recognize and appreciate that members of the media are interested in Costco, its products and its merchandising philosophy."[6] In fact, Costco has used its earnings calls to proclaim the importance of the $1.50 hot dog combo and $4.99 rotisserie chicken.[7] In this context, Plaintiff's

---

[6] Taylor, *supra*, n.3.

[7] Reuter, *supra* n.5.

earnings-call allegations plausibly allege that the company expected its customers to hear about its tariff policy and rely on it before deciding to make a "Costco trip."

### 4. Actual Harm and Causation

The complaint establishes actual harm and causation by demonstrating that the Plaintiff "would not have purchased" products from Costco "absent" the deceptive act. *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 630 (2008). This requires nothing more than a showing that the plaintiff "could have shopped around and obtained a better price in the marketplace." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan*). While these allegations must not be "speculative and conclusory," the plaintiff need only "conduct a minimal 'precomplaint investigation' to gather sufficient factual information" to support that claim because discovery will color in the details. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014). The complaint meets this requirement by alleging Costco "hiked higher than most" due to tariffs and that Plaintiff "paid more for tariffed goods" at Costco "[a]s a direct result of Costco's tariff pass-through pricing." Compl. ¶¶ 30-31. Had he known this ex ante, Plaintiff could have "shopped around and found a better price."

To be clear, *Kahn* does not require reasonable consumers to actually compare prices after they have decided to go to Costco. 107 F.4th at 599. It is enough that Costco customers operate in a limited-information environment where Costco's public statements rule in the absence of advertising. *Id.* Looking at the "totality of the information" available, Costco's "control . . . of information" by not publishing prices outside of warehouses and the "circumstances and design of [Costco's] large retail stores" demonstrate that actual, real-time price comparisons inside the warehouse are impracticable. *Id.* at 595, 598, 603. What matters is that if Costco honestly presented its tariff policy, Plaintiff would have made different decisions before a "Costco trip." Compl. ¶ 31.

12

### 5. Other States

Plaintiff agrees with Costco's concession that the complaint's class claims based on other states' consumer statutes rise and fall on his ICFA claims. Mot. at 13. Courts in this district have often recognized that named plaintiffs may "assert the claims of class members in other states." *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 758 (N.D. Ill. 2019).

### B. Plaintiff States Claims Under Equity

Plaintiff's claims for unjust enrichment under quasi contract and for money had and received arise in equity. In light of equity's inherent flexibility, courts must pay attention to the "facts and context" and avoid the rigidity that equity avoids. *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 482 (7th Cir. 2009). Costco's motion adopts an "oversimplified" and "too-narrow view of the equitable element" of these claims, which requires consideration of the facts on a full record. *See id.* at 482-83 (reversing judgment after bench trial on these grounds).

### 1. Plaintiff States a Claim for Unjust Enrichment

The essence of unjust enrichment is "the defendant's receipt of a benefit which would be unjust for him to retain without paying for it." *Partipilo v. Hallman*, 156 Ill. App. 3d 806, 809 (1987). It encompasses the exact situation here where unlawful government action creates a windfall for a defendant at a plaintiff's expense. *Id.* Costco errs in arguing that plaintiffs must establish that Costco's actions are damnable because they violate "fundamental principles." Mot. at 13. *Partipilo* specifically rejected this argument. There, the government mistakenly levied taxes against the plaintiff for improvements to the defendant's neighboring property. Disposing of the defendant's argument that a plaintiff must establish a defendant's actions are "unlawful," the court explained that unjust enrichment "focuses on the enrichment of the defendant, and the fact that it would be an injustice for the defendant to receive this benefit without paying the plaintiff for it"—not unlawfulness. *Id.* at 810-11. It did not matter that the government—not the defendant—committed

13

the error. Equity required the defendant to pay. So even if Costco had not deceived, it would still be unjust for it to pass on tariff costs to the Plaintiff and then recover refunds from the government.

Costco's misguided argument that Plaintiff's unjust enrichment claim is preempted by contract law ignores the rule that unjust enrichment claims "survive a motion to dismiss when the validity or the scope of the contract is difficult to determine, or if the claim at issue falls outside the contract." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. *Gagnon* reversed judgment on unjust enrichment because real estate contracts between the parties "d[id] not speak to the inducement on which the plaintiff bases his claim [in the property]—they memorialize the effect of the alleged inducement." *Id.* ¶ 29. Likewise here. The sales contracts simply "memorialize the effect" of Costco's secret pass-throughs, and Costco identifies no term covering tariffs or tariff refunds. Crucially, the complaint alleges no contract claim whatsoever, which is typically a prerequisite for dismissing unjust enrichment on this ground, as Costco's cases show. *Barrientos v. Fitness Member Servs., LLC*, 749 F. Supp. 3d 944, 959 (N.D. Ill. 2024) (unjust enrichment "brought solely in the alternative" if contracts deemed "unenforceable"); *see DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1050 (2008) (allowing unjust enrichment where "contract attached to the complaint").

The Seventh Circuit resolved any doubt on this issue in *Gociman v. Loyola University of Chicago*, 41 F.4th 873 (7th Cir. 2022). There, the plaintiffs claimed that the university unjustly retained their tuition while failing to provide in-person education. The parties' "disagree[ment] about whether the [pleaded] contract includes an implied promise to provide students in-person instruction" alone was "enough for the students' unjust enrichment claim to survive a motion to dismiss." *Id.* at 887. But the court identified a fatal pleading error not present here: the plaintiffs' unjust enrichment claim "incorporated by reference allegations of the existence of a contract between the parties" that specifically covered in-person education. *Id.* Here, the complaint mentions no contract at all: the word appears but once—in the negative, "quasi contract" claim that per se disavows a contract. *See*

14

*Lirtzman v. Fuqua Indus., Inc.*, 677 F.2d 548, 553 (7th Cir. 1982) ("quasi-contract is not a contract at all, but a duty . . . to avoid . . . unjust enrichment").

Plaintiff also disputes the premise of Costco's argument that his ICFA claims and unjust enrichment claims rise or fall on the "same improper conduct." Mot. at 14. Plaintiff's ICFA claims do not turn on Costco's actions in recovering the tariffs from the federal government, and his unjust enrichment claims do not require deception. These different factual predicates prevent lumping the claims together. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶¶ 26-31 (reversing judgment on one unjust enrichment claim while affirming judgment on another).

### 2. Plaintiff States a Claim for Money Had and Received

Money had and received is established "where defendant has received money which in equity and good conscience belongs to the plaintiff." *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925 (2000). It is "similar to a claim for unjust enrichment" but not identical. *Bueker v. Madison Cnty.*, 2016 IL App (5th) 150282, ¶ 53. A claim for unjust enrichment must show that the defendant retained the benefit "to the plaintiff's detriment," *Gociman*, 41 F.4th at 873, while money had and received recognizes less direct harm—only that the money "in equity and good conscience belongs to the plaintiff," *Bueker v. Madison Cnty.*, 2016 IL App (5th) 150282, ¶ 53. Under the latter, a court in equity may determine that fairness and good conscience require Costco to treat tariff refunds and obligations the same.

### IV. Plaintiff Seeks Leave to Amend

If this Court grants all or any portion of Costco's motion to dismiss, Plaintiff asks that the dismissal be without prejudice and with leave to amend. Rule 15(a)(2) requires this court to "freely give leave when justice so requires." This "requires that leave to amend be granted at least once." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

### CONCLUSION

For these reasons, Plaintiff requests this Court deny Costco's motion to dismiss.

15

Date: June 16, 2026

Respectfully submitted,

/s/ *Ryan Z. Cortazar*
George A. Zelcs (IL Bar No. 3123738)
Ryan Z. Cortazar (IL Bar No. 6323766)
KOREIN TILLERY LLC
205 N Michigan Ave., Suite 1950
Chicago, Illinois 60601
Tel: (312) 641-9750
gzelcs@koreintillery.com
rcortazar@koreintillery.com

*Attorneys for Plaintiff Matthew Stockov*

16