**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MATTHEW STOCKOV, individually and on
behalf of all others similarly situated,

               Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

               Defendant.

Case No.: 1:26-cv-02734

Hon. Steven C. Seeger

**DEFENDANT COSTCO WHOLESALE CORPORATION'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................1

I.    This Court Lacks Article III Jurisdiction .......................................................2

    A.    Plaintiff's claims premised on "double recovery" are not ripe. ..............2

    B.    Plaintiff suffered no injury because he received the benefit of his bargain. ............3

    C.    Plaintiff fails plausibly to allege that he paid tariff-affected prices. ........................6

II.    Plaintiff's Claims Fail on the Merits.............................................................7

    A.    Plaintiff's consumer-fraud claim based on the earnings call fails. .........................7

    B.    Plaintiff abandoned his other statutory claims, which should be dismissed with prejudice...............................................................11

    C.    The equitable claims fail for multiple reasons. .......................................11

CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Barrientos v. Fitness Member Servs., LLC*,
749 F. Supp. 3d 944 (N.D. Ill. 2024) ...................................................................................13

*Braun v. Vill. of Palatine*,
56 F.4th 542 (7th Cir. 2022) .................................................................................................11

*Camasta v. Jos A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ...............................................................................................10

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................................13, 14, 15

*Cox v. UPS, Inc.*,
2026 WL 986186 (N.D. Ill. Apr. 13, 2026) ........................................................................11

*Curtis v. 7-Eleven, Inc.*,
2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ......................................................................4

*Damico v. Lulifama.com, LLC*,
2026 WL 850784 (N.D. Ill. Mar. 27, 2026).......................................................................4, 6

*Eike v. Allergan*,
850 F.3d 315 (7th Cir. 2017) ...................................................................................... passim

*Finnigan v. Mendrick*,
2021 WL 736228 (N.D. Ill. Feb. 24, 2021) ..........................................................................3

*Flores v. United Airlines*,
426 F. Supp. 3d 520 (N.D. Ill. 2019) ......................................................................4, 13, 15

*Geske v. PNY Techs., Inc.*,
503 F. Supp. 3d 687 (N.D. Ill. 2020) ....................................................................................4

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022) .................................................................................................12

*Heng v. Heavner, Beyers & Mihlar, LLC*,
849 F.3d 348 (7th Cir. 2017) .................................................................................................2

*Jarman v. Am. Traffic Sols., Inc.*,
2019 WL 2173472 (S.D. Ill. May 20, 2019).......................................................................15

ii

*Jenkins v. Mercantile Mortg.*,
   231 F. Supp. 2d 737 (N.D. Ill. 2002) .......................................................................15

*Kahn v. Walmart Inc.*,
   107 F.4th 585 (7th Cir. 2024) ......................................................................... 4-5, 8

*Kim v. Carter's Inc.*,
   598 F.3d 362 (7th Cir. 2010) ..................................................................................11

*Lauer v. John Paul Mitchell Sys.*,
   2025 WL 3485172 (N.D. Ill. Dec. 4, 2025)............................................................15

*Loeb Indus., Inc. v. Sumitomo Corp.*,
   306 F.3d 469 (7th Cir. 2002) ....................................................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).................................................................................................6

*N. Tr. Co. v. MS Sec. Servs., Inc.*,
   2006 WL 695668 (N.D. Ill. Mar. 15, 2006)...................................................... 12-13

*Oxford Media Grp., Inc. v. Fam. Worship Ctr. Church, Inc.*,
   2017 WL 4164172 (N.D. Ill. Sept. 20, 2017) .........................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ....................................................................................7

*Randazzo v. Harris Bank Palatine, N.A.*,
   262 F.3d 663 (7th Cir. 2001) .............................................................................. 14-15

*Rowe v. Skyway Concessions Co. LLC*,
   2025 WL 1736756 (N.D. Ill. June 23, 2025) ........................................................ 8-9

*Schultz v. Gree*,
   2024 WL 4818734 (N.D. Ill. Nov. 18, 2024) .........................................................10

*Simoni v. Hi-Tech Pharms., Inc.*,
   2025 WL 2614685 (N.D. Ill. Sept. 10, 2025) .......................................................4, 6

*Simonsen v. Bd. of Educ. of City of Chicago*,
   2001 WL 1250103 (N.D. Ill. Oct. 17, 2001), *aff'd*, 115 F. App'x 887 (7th Cir.
   2004) .......................................................................................................................6

*Toulon v. Continental Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) ..................................................................................13

*Util. Audit, Inc. v. Horace Mann Serv. Corp.*,
   383 F.3d 683 (7th Cir. 2004) ..................................................................................12

iii

*Wickstrom v. Air Line Pilots Assn., Int'l,*
   156 F.4th 835 (7th Cir. 2025) ...............................................................................3

**STATE CASES**

*Barbara's Sales, Inc. v. Intel Corp.,*
   227 Ill. 2d 45 (2007) ...........................................................................................8

*Flores v. Aon Corp.,*
   2023 IL App (1st) 230140.....................................................................................14

*Gagnon v. Schickel,*
   2012 IL App (1st) 120645.....................................................................................13

*Kaiser v. Fleming,*
   315 Ill. App. 3d 921 (2000) .................................................................................15

*Lewis v. Lead Indus. Ass'n,*
   342 Ill. App. 3d 95 (2003) ...................................................................................14

*Oliveira v. Amoco Oil,*
   201 Ill.2d 134 (2002) ...........................................................................................10

*Partipilo v. Hallman,*
   156 Ill. App. 3d 806 (1987) .................................................................................14

*Rasgaitis v. Waterstone Financial Group, Inc.,*
   2013 IL App (2d) 111112 ......................................................................................9

*Steinberg v. Chi. Med. Sch.,*
   69 Ill.2d 320 (1977) .............................................................................................11

*Zadrozny v. City Colls. of Chi.,*
   220 Ill. App. 3d 290 (1991) .................................................................................12

**INTRODUCTION**

Plaintiff has essentially abandoned the case pled in his complaint and has set forth entirely new theories in his opposition. But the new theories fail for the same reasons as his old ones do.

Plaintiff's opposition confirms that the Court lacks Article III jurisdiction. In an effort to avoid ripeness problems, plaintiff purports to disavow any injury based on Costco's future receipt and retention of government refunds and contends instead that his claims ripened at the cash register, when he paid prices allegedly incorporating tariff costs. But that payment does not constitute injury in fact under Article III, because plaintiff got what he paid for; his preference to pay less is "not an actionable injury." *Eike v. Allergan*, 850 F.3d 315, 318 (7th Cir. 2017).

On the merits, plaintiff marshals no defense of the consumer-deception claim he pled, which was based on a general statement by Costco's CFO that "raising prices is always seen as a last resort." Compl. ¶¶ 28, 50(a). He pivots instead to an unpled claim about an "example" the CFO offered about raising prices on imported flowers while holding the price on two "staple items" to account for "inflation as a result of tariffs." ECF 22-1 at 26. Any consumer-fraud claim based on that example—had it been pled—would fail many times over, so leave to amend should be denied. And because plaintiff entirely ignores Costco's arguments for dismissal of his "omission" and "unfair practice" statutory claims, they too should be dismissed with prejudice.

Plaintiff's equitable claims fall with his statutory claims. Plaintiff tries to save the equitable claims by contending that they are based not on any deception by Costco in the past but instead solely on Costco's retention of tariff refunds in the future. But claims about such hypothetical future events are, by definition, not ripe. His equitable claims also fail on the merits. They are impermissible in light of the sales contract he formed with Costco. And any retention of tariff refunds—or any future choice to pass refunds through to members in the form of lower prices or other value—would not violate any fundamental equitable principle.

1

By failing to defend the complaint as pled, plaintiff's opposition concedes its defects and makes clear that amendment would be futile. The complaint should be dismissed with prejudice.[1]

## I. This Court Lacks Article III Jurisdiction

### A. Plaintiff's claims premised on "double recovery" are not ripe.

As pled, plaintiff's claims are premised on an allegedly improper "double recovery"—i.e., the notion that Costco may receive refunds of IEEPA tariffs from the government and retain the amount plaintiff allegedly paid in tariff-driven price increases. Compl. ¶¶ 5, 35-37. Those claims are not ripe because they depend on a series of contingent future events. Mot. 5-6. To date, Costco has received from the government only a small fraction of the IEEPA tariffs it paid;[2] the government's refund process could take many months to complete; and in the still-evolving landscape, it is far from clear that the government will complete the process at all unless compelled by the courts to do so. Costco also cannot figure out "the best way to return this value to [its] members" until it has clarity on the tariff refunds it will receive from the government. Mot. Ex. 2, at 3. It therefore remains hypothetical that Costco will receive—much less retain—any "double recovery."

Plaintiff is wrong that Costco's mere "entitlement to tariff refunds" makes his claims ripe. Opp. 4-5. This Court cannot feasibly consider the merits or fashion any remedy without a complete picture of what refunds Costco ultimately does (or does not) receive, whether those refunds relate to costs passed on to members, and how Costco decides to return any such recovered value. *See* Mot. 6.

---

[1] "District courts have broad discretion to deny leave to amend where . . . amendment would be futile." *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (citation omitted).

[2] *Compare* Opp. 5 ($23.68 billion processed as of June 10, 2026), *with* Compl. ¶ 35 (approximately $166 billion total amount of IEEPA tariffs).

Contrary to plaintiff's suggestion, whether and how those contingencies come to pass does not affect only the measure of damages. Opp. 4. It determines whether it is even possible to allege a "double recovery." Plaintiff cites *Wickstrom v. Air Line Pilots Association International*, 156 F.4th 835 (7th Cir. 2025), for the proposition that future "remedial action" by Costco after it receives the refunds "cannot undo" the harm that plaintiff already has suffered. Opp. 5. But that assumes that plaintiff has already in fact suffered some completed harm due to a "double recovery" by Costco, *see, e.g.*, Compl. ¶¶ 35-38—and he has not. If (for instance) Costco were to receive a full tariff refund tomorrow and decide that all of that money should be passed on to members in one form or another, no conceivable double recovery would ever have existed. *See Finnigan v. Mendrick*, 2021 WL 736228, at *5 (N.D. Ill. Feb. 24, 2021). In other words, the issue here is not whether Costco's future actions could moot a genuine dispute that exists now (*contra* Opp. 5), but whether any genuine dispute ever will arise at all. The fact that it has not yet arisen is exactly why plaintiff's "double recovery" theory is not ripe for adjudication by this Court.

**B.      Plaintiff suffered no injury because he received the benefit of his bargain.**

To try to avoid the complaint's threshold ripeness defect, plaintiff's opposition moves away from the double-recovery theory, arguing instead that his statutory and equitable claims ripened because he was injured "the moment he purchased goods" with "prices" that he says were "tariff-inflated." Opp. 5, 4. But plaintiff cannot meet the requirements of Article III on that theory either, because the fact that he paid the price accurately listed on an item is not an actionable injury—regardless of the reasoning that Costco used to set that price in the first instance.

The Seventh Circuit's decision in *Eike* explains exactly why plaintiff's theory that he was injured by the prices he voluntarily paid does not fly. *See Eike*, 850 F.3d at 317. As the Seventh Circuit explained, absent allegations of an antitrust violation or a "claim that the defendant[] misrepresent[ed] the quality of [the] product," neither of which are present in the instant case,

3

Mot. 7, mere "dissatisfaction" with a product's price is insufficient to confer standing as a matter of law, *Eike*, 850 F.3d at 317. That is so because "[t]he fact that a seller does not sell the product . . . at the price you'd like to pay[] is not an actionable injury." *Id.* at 318. It is nothing more or less than receipt of exactly the benefit for which the customer bargained at exactly the price the customer agreed he was willing to pay. *See, e.g.*, *id.*; *Damico v. Lulifama.com, LLC*, 2026 WL 850784, at *3 (N.D. Ill. Mar. 27, 2026) (customers must "decide for themselves whether they are getting value for their money," and "if a buyer is not happy with their choice, they are not injured for Article III purposes because they received the benefit of their bargain").

Plaintiff has no answer to *Eike*, so he relies on inapposite decisions involving misrepresentations that he does not allege. In some of those decisions, the purchased product was defective or misleadingly labeled or advertised, so that consumers were deprived of the benefit of the bargain into which they entered.[3] Others involve a concealed increase in the posted price for a consumer item—for instance, in *Kahn v. Walmart Inc.*, 107 F.4th 585 (7th Cir. 2024), *cited in* Opp. 6, the defendant engaged in a shelf-pricing "bait-and-switch" by posting a low price on the shelf (the "bait") but then charging a higher price at the register (the "switch").

On plaintiff's own allegations, not a single one of those things is true here. And plaintiff's use of nefarious-sounding phrases like "secret tariff surcharges" does not change what the complaint alleges or make Costco's posted prices any less accurate. Opp. 5. A retailer has no obligation to disclose the various components of a posted price. *See, e.g.*, *Simoni v. Hi-Tech Pharms., Inc.*, 2025 WL 2614685, at *3 (N.D. Ill. Sept. 10, 2025) (dismissing ICFA claim for lack

---

[3] *See* Opp. 6-7 (citing, e.g., *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *6 (N.D. Ill. Sept. 13, 2022) (plaintiff alleged products were falsely labeled "recyclable" and that she "would not have purchased the [] products" or would have paid less if she had known the truth); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 697 (N.D. Ill. 2020) (plaintiff "didn't get what she paid for")).

4

of standing where injury premised solely on unawareness that part of price went to influencers); *Flores v. United Airlines*, 426 F. Supp. 3d 520, 531 (N.D. Ill. 2019) ("There is nothing immoral, oppressive, unscrupulous or unethical about charging a consumer a price she is willing to pay.").

Plaintiff's opposition tries to invent an entirely new theory of injury, absent from the complaint, based on "sunk costs" and the supposed attributes of a "Costco trip." Opp. 1, 6-7, 8-9.[4] Rather than take issue with the products he purchased or the accuracy of their listed prices, plaintiff argues that Costco's general commitment to low prices influenced him to go to Costco to shop. But where, as here, the prices are accurately posted and the goods purchased are not defective, "dissatisfaction" with a supposed mismatch between a retailer's corporate philosophy and the shopping experience cannot give rise to an Article III injury any more than dissatisfaction with a particular posted price can. *Eike*, 850 F.3d at 317. A general corporate philosophy did not induce plaintiff to buy specific goods at a specific price, so no such philosophy was part of any "bargain" that plaintiff struck during his trips to Costco. Plaintiff's attempt to analogize to the "sunk costs" that gave rise to an ICFA claim in *Kahn* makes no sense. Opp. 6. There, customers were "left with little choice but to submit" to the higher prices charged at the register because they could not discover the discrepancy with the shelf price until they paid and audited their receipts. 107 F.4th at 602-03. There are no remotely similar circumstances here that deprived plaintiff of choice—he willingly purchased products at accurately posted prices.

Plaintiff's passing attempt to analogize to an antitrust injury fares no better. *See* Opp. 6 (quoting *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir. 2002)). *Loeb* involved alleged illegal price-fixing, and the plaintiff sued the alleged price-fixers. Here, plaintiff does not

---

[4] The new theory rests on a welter of fanciful (and unpled) assertions, from a supposed lack of cell service at Costco to an *Arrested Development* meme about the price of bananas.

allege any collusive, noncompetitive pricing scheme, and it was the government, not Costco, that imposed the unlawful tariffs. Costco simply made discretionary decisions about pricing based on market conditions—exactly the kind of decisions that retailers make virtually every single day. If plaintiff's "disappointment" were enough to give him standing to challenge those decisions, then disgruntled customers and courts would soon be setting retailers' prices and dictating their margins. That would be an absurd legal regime, as *Eike* recognizes. *See Eike*, 850 F.3d at 318.

Finally, contrary to plaintiff's contention, Opp. 7, plaintiff's equitable claims do not independently supply him with Article III standing. Those claims are once again premised on "disappointment" with accurately posted prices that plaintiff chose to pay. That is not enough for Article III standing, regardless of how the claim is labeled. *See, e.g.*, *Damico*, 2026 WL 850784, at *3 (applying *Eike* to dismiss entire case, including unjust-enrichment theories, for lack of standing); *Simoni*, 2025 WL 2614685, at *1-3 (dismissing entire case for lack of standing).

### C. Plaintiff fails plausibly to allege that he paid tariff-affected prices.

Plaintiff also does not plausibly allege that he paid any tariff-related price increase at Costco. *See* Mot. 7-8. He therefore has not adequately alleged that he is "himself among the injured," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992), which means he lacks standing.

Plaintiff's opposition simply repeats his conclusory allegation that he paid tariff-related price increases. Opp. 7 ("Plaintiff flatly alleges that his purchases had prices contaminated by pass-throughs of unlawful tariffs."). But plaintiff does not confront the reason why that allegation cannot be accepted as true: it is directly undermined by allegations in the complaint acknowledging that not all imported products were subject to tariffs, Compl. ¶¶ 19-20, and that Costco did not raise prices on all tariffed products, *id.* ¶¶ 26, 29. Such internal contradictions render a complaint implausible. *See, e.g.*, *Simonsen v. Bd. of Educ. of City of Chicago*, 2001 WL 1250103, at *1 n.3 (N.D. Ill. Oct. 17, 2001), *aff'd*, 115 F. App'x 887 (7th Cir. 2004).

6

Plaintiff also is wrong to suggest that alleged higher company-wide profit margins support the inference that he paid any direct tariff pass-through. Opp. 2-3, 10. Company-wide margins reflect countless variables, including product mix, costs, pricing, and inventory. *See* ECF 22-1 at 6-7. Because myriad business and market considerations influence a retailer's costs and prices, company-wide gross margins alone cannot plausibly establish that plaintiff paid tariff pass-throughs.

## II. Plaintiff's Claims Fail on the Merits

### A. Plaintiff's consumer-fraud claim based on the earnings call fails.

Plaintiff fails to defend the merits of the consumer-fraud claim he pleaded in the complaint, which was based on the non-actionable statement that raising prices is always seen as a "last resort." Compl. ¶ 50(a). His opposition focuses instead on a different remark—not mentioned in the complaint—about the price of two "staple items." But plaintiff cannot amend his complaint in a response to a motion to dismiss. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). And, in any event, his effort to state a consumer-deception claim based on the statement about "staple items" suffers from the same flaws as his original claim based on the "last resort" statement. Because there are no actionable promises to be found anywhere in the earnings-call transcript—and its content and context make it the *opposite* of an affirmative representation to consumers—leave to amend would be futile.

***No deception.*** Plaintiff's deception theory remains fundamentally flawed because reasonable consumers do not interpret generalized investor communications as binding promises regarding pricing—particularly when those communications merely provide "examples" about the effect of tariffs on two particular items in a prior quarter.

The comment on which plaintiff now relies arose during the same earnings call as the "last resort" statement, after Costco was asked to provide "a sense of how much [tariff] price … might

7

end up having to be passed on." ECF 22-1 at 25. Noting the "dynamic environment," Costco's CFO explained: "it's difficult to say in general terms, because it really depends on the individual items." *Id.* at 26. He then offered "a couple of examples" from the prior quarter. *Id.* The examples were "fresh items" imported from "Central and South America": two "staple items" (pineapples and bananas) where Costco "essentially held the price," and another (flowers) where Costco "did increase some price there because we felt that . . . it was more of a discretionary item." *Id.*

Contrary to plaintiff's argument, Costco did not represent that prices would never be raised on "staple[s]" or that any price increases would be "limited" to "discretionary" items. Opp. 11. Indeed, Costco's CFO specifically noted that the effect of tariffs "*really depends on the individual items.*" ECF 22-1 at 26 (emphasis added). No reasonable consumer could understand his example about pineapples and bananas as a promise that no "staple" items imported from countries subject to IEEPA tariffs would ever contain any tariff pass-through, or even a specific representation about how those two particular products would be priced going forward. The surrounding context, in which Costco's CFO stated that the company had *already* raised prices on some products and that other prices could be affected by tariffs in the future, confirms that the "staple" comment was not an actionable promise to keep prices below a certain level. *See id.* at 26-27.[5]

*Kahn* does not support plaintiff's theory of deception. Opp. 10. As explained above, *Kahn* involved a classic "bait and switch": a low price posted on the shelf, and a higher price charged at the register. 107 F.4th at 599. Here, Costco's prices were accurately posted and accurately charged. And no reasonable consumer could be misled by the CFO's earnings-call statements notwithstanding accurately posted prices, because that call did not mention specific prices at all—

---

[5] Given that one of the example items was "pineapples," it is also not clear which products such a "staples" promise would cover. A representation is not actionable under the ICFA when it is "not capable of precise measuring." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 75-76 (2007).

just Costco's pricing philosophy and approach to navigating the dynamic tariff environment, where specific pricing decisions were item-specific and based on an array of factors. *See, e.g.*, *Rowe v. Skyway Concessions Co. LLC*, 2025 WL 1736756, at \*4 (N.D. Ill. June 23, 2025) (dismissing claim where plaintiff did not allege defendants "charged any toll greater than what [they] posted or otherwise communicated to the public the toll prices would be").

Finally, in arguing that there is no "per se" rule that "forward-looking statements" cannot be actionable, Opp. 10, plaintiff attacks a strawman. What dooms plaintiff's claims here is not some per se rule about forward-looking statements, but the nature of the specific statements that form the basis of his claim. *See* Mot. 9. Those statements about Costco's general approach to navigating the dynamic tariff environment are non-definitive, general predictions about future events, not concrete representations of fact on which a customer could reasonably rely.

Plaintiff tries to analogize the CFO's remarks to the affirmative promises at issue in *Rasgaitis v. Waterstone Financial Group, Inc.*, 2013 IL App (2d) 111112, but that analogy fails. *Rasgaitis* involved concrete, specific guarantees: "100% safe" and "guaranteed benefits and $96,000 in returns in five years." *Id.* ¶ 43. The earnings call here did not. Plaintiff can argue otherwise only by mischaracterizing the earnings-call statements and ignoring other statements in the same call that directly contradict his theory. *Compare* Opp. 11 (plaintiff describing "staple" remark as "specifically limit[ing] tariff increases to 'discretionary,' luxury items" and "rul[ing] out pass-throughs on 'staples'"), *with*, *e.g.*, ECF 22-1 at 26 (CFO's actual remark, stating pricing "really depends on the individual items").[6]

---

[6] Plaintiff's news articles about Costco's decisions to keep prices very low on hot dogs and rotisserie chickens do not help him. Opp. 1, 9. If anything, Costco's $1.50 hot-dog combo underscores that Costco makes discretionary pricing decisions for each item based on a combination of market-based and values-based considerations—the very point that Costco's CFO explained on the earnings call when discussing the impact of the tariffs on Costco's prices.

***No intent to induce reliance.*** Plaintiff fails to explain how intent to induce reliance could plausibly be inferred from the comments at issue. Those comments expressly state that Costco *already had raised prices* on some items to account for tariffs and repeatedly emphasized the "dynamic," "changing," and "evolving environment." *E.g.*, ECF 22-1 at 9, 25. Plaintiff instead tries to establish intent by pointing to (pay-walled) articles outside the complaint, but those articles are not factual allegations, and they have nothing to do with IEEPA tariffs. *See* Opp. 9, 11. Neither Costco's general press strategy (Opp. n.3, n.6) nor the fact that Costco's $1.50 hot-dog combo drives memberships (Opp. n.5, n.7) give rise to any inference of an intent by Costco to induce reliance on the earnings call here as a promise to not raise prices.

***No causation or actual harm.*** Plaintiff's opposition also does nothing to justify his failure to allege that he suffered any actual damages as a result of either the "last resort" or "staples" comments. Mot. 11-12. Plaintiff asserts that "[h]ad he known" that Costco had raised prices in response to tariffs "ex ante," he "could have 'shopped around and found a better price,'" Opp. 12, but the Seventh Circuit has squarely held that such a "statement alone cannot support a claim of actual damage." *Camasta v. Jos A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014).

Even if he had alleged actual damages, plaintiff has not alleged causation. He does not claim that he heard or read any part of the earnings call—let alone that, but for the earnings call, he would not have shopped at Costco. *See Schultz v. Gree*, 2024 WL 4818734, at *5 (N.D. Ill. 2024). Instead, plaintiff argues that, had Costco "represented that it was incorporating tariffs into its prices," he would not have shopped there. Opp. 6-7. Critically, however, Costco *did* make that representation. In the very earnings call on which plaintiff relies to allege deception, the CFO stated in unmistakable terms that Costco had raised some prices to account for the costs of tariffs. Mot. 2 (citing ECF 22-1 at 26-27); *Oliveira v. Amoco Oil*, 201 Ill.2d 134, 155 (2002) (those who

10

"knew the truth" have no valid ICFA claim). The only possible conclusion is that plaintiff was not, in fact, deceived in any way by the earnings call and that it therefore caused him no injury.

**B.      Plaintiff abandoned his other statutory claims, which should be dismissed with prejudice.**

In addition to failing to defend his "last resort" deception theory, plaintiff has abandoned his statutory claims based on an omission or an "unfair" business practice. *See* Compl. 50(b)-(c). He ignores all of the reasons why those claims fail, *see* Mot. 9-11, and does not make any effort to distinguish the authorities cited by Costco that show why the claims cannot proceed.

Plaintiff "waive[d]" the right to pursue those claims by "fail[ing] to … respond[] to alleged deficiencies in a motion to dismiss.'" *Braun v. Vill. of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (quotation omitted). Courts routinely dismiss individual claims with prejudice when a plaintiff fails to adequately respond to a dismissal motion. *See, e.g.*, *Cox v. UPS, Inc.*, 2026 WL 986186, at *7 (N.D. Ill. Apr. 13, 2026). That is exactly what happened here.

**C.      The equitable claims fail for multiple reasons.**

Plaintiff's equitable claims are a moving target. When arguing that his claims are ripe, he says that his injury was complete when "Costco took tariff-inflated charges from him at the register." Opp. 4. But when it comes time to argue the *merits*, he insists the same claims are based on Costco's hypothetical future receipt of government refunds. *See* Opp. 14 ("it would still be unjust for [Costco] to … recover refunds from the government"); *id.* 15 (arguing that Costco cannot keep "tariff refunds"). Both things cannot be true. Regardless, plaintiff's merits arguments fail on their own terms:  there is no unfairness to plaintiff in Costco's possible receipt of tariff refunds.

**1.      Both equitable claims are barred by the parties' purchase contracts.**

Plaintiff does not contest that he and Costco formed straightforward sales contracts when Costco accepted plaintiff's offers to purchase goods at their posted prices. *See Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (citation omitted). Those purchase contracts bar *any* quasi-

11

contract recovery, whether styled as a claim for unjust enrichment or money had and received. *See* Mot. 13, 15. "No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter." *Zadrozny v. City Colls. of Chi.*, 220 Ill. App. 3d 290, 295 (1991).[7]

Plaintiff's retort that Costco has not identified a specific contract "term covering tariffs or tariff refunds," Opp. 14, lacks any merit. "In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) (affirming denial of leave to amend). Here, the subject matter of the contracts is plaintiff's purchases at Costco, and those same purchases give rise to his equitable claims. *See* Compl. ¶ 64. In addition, the contracts into which plaintiff entered *did* contain a term that covered tariffs and any other economic conditions that might have formed the basis for Costco's pricing decisions: the posted price itself. Consumers never know all of the specific reasons why a retailer offers a good at a specific price, but that does not make their purchase contracts any less binding.

If plaintiff's contrary argument were right, a quasi-contractual claim would always be available despite a contract because the plaintiff could always frame some disappointment with the transaction as a missing contractual term. That is not the law. *See N. Tr. Co. v. MS Sec. Servs., Inc.*, 2006 WL 695668, at *13 (N.D. Ill. Mar. 15, 2006) ("Quasi-contract remedies do not step in

---

[7] Plaintiff contends that this rule applies only if the plaintiff alleges the existence of a contract in his complaint. If that were true, plaintiffs could plead around a contract simply by pretending it does not exist. Plaintiff cites no authority for such an illogical requirement. In any event, plaintiff *did* allege all the elements of a contract: an offer by Costco to sell goods at a specified price and plaintiff's acceptance of the offer by tendering that price and receiving the goods. *See* Compl. ¶ 9. For similar reasons, plaintiff's analogy to *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873 (7th Cir. 2022), which involved an unclear written contract, *id.* at 887, is unavailing, as there was no ambiguity in Costco's offer to sell at a specified price and plaintiff's acceptance of that offer.

12

at the moment a contract claim ends.").

### 2. Plaintiff fails to state an unjust-enrichment claim.

"Unjust enrichment does not stand on its own. Instead, unjust enrichment stands on the shoulders of some other claim." *Barrientos v. Fitness Member Servs., LLC*, 749 F. Supp. 3d 944, 959 (N.D. Ill. 2024). Because plaintiff "fails to state a claim under the ICFA, [he] necessarily fails to state a claim for unjust enrichment." *Flores v. United Airlines*, 426 F. Supp. 3d 520, 533 (N.D. Ill. 2019) (citing *Toulon v. Continental Cas. Co.*, 877 F.3d 725, 741-42 (7th Cir. 2017)).

Plaintiff's opposition tries to evade that principle by characterizing the unjust-enrichment claim as turning on Costco's receipt of tariff refunds from the government rather than on deception and characterizing the ICFA claim as turning on deception rather than on Costco's receipt of tariff refunds. *See* Opp. 15. That purported distinction cannot be reconciled with the complaint, and it is irrelevant in any event. An unjust-enrichment claim rises and falls together with a related ICFA claim regardless of whether the two claims are identical or based on identical facts. *See, e.g.*, *Flores*, 426 F. Supp. 3d at 533. Tellingly, plaintiff does not cite any case in which an unjust-enrichment claim was allowed to proceed after an ICFA claim was dismissed. *See* Opp. 15 (citing only *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶¶ 26-31, which does not address the ICFA).

That is reason enough for dismissal, but plaintiff's unjust-enrichment claim also fails on the merits because he cannot allege that Costco has unjustly retained a benefit to his detriment. There is nothing either unjust or detrimental to plaintiff about Costco's retention of amounts that plaintiff freely chose to pay in exchange for valuable products. *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011), demonstrates as much. There, consumers brought an unjust-enrichment claim against cigarette sellers based on alleged suppression of information about smoking. The Seventh Circuit held that, absent deception, the consumers' "transfer of money to the defendants in exchange for cigarettes was not to their detriment—and, accordingly, the defendants' continued

13

retention of the money cannot be to their detriment either." *Id.* at 519. So too here. Plaintiff's transfer of money to Costco was not to his detriment because it was in exchange for goods, so Costco's retention of that payment is not detrimental to plaintiff either. *See Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶¶ 33-38 (similar; plaintiffs received payment in exchange for work).

Any future government refunds also would not create a benefit for Costco to plaintiff's detriment. *Contra* Opp. 13-14. Plaintiff's purchases were not conditioned on any right to recover a portion of the purchase price if Costco were to recover a portion of its costs. And plaintiff does not identify any independent legal or equitable principle that would require Costco to return money to him under those circumstances. *See, e.g.*, *Lewis v. Lead Indus. Ass'n*, 342 Ill. App. 3d 95, 105 (2003) (unjust enrichment requires "some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty").

Plaintiff wrongly contends that he need not meet the part of the unjust-enrichment test that requires him to allege that Costco's retention of tariff refunds would be "unjust" and "violate 'fundamental principles.'" Opp. 13. But that element is black-letter law. Mot. 13 (citing *Cleary*, 656 F.3d at 516). Plaintiff relies on *Partipilo v. Hallman*, 156 Ill. App. 3d 806 (1987), but that case did not change the well-established elements of an unjust-enrichment claim and, in any event, involved fundamentally different circumstances. There, the government charged the plaintiff taxes on parcels owed by a neighbor, giving the neighbor a tax break at plaintiff's expense. 156 Ill. App. 3d at 809. In other words, the government forced the plaintiff to benefit his neighbor to his own detriment by discharging the neighbor's tax obligation. The transactions here are fundamentally different: plaintiff voluntarily purchased goods at Costco; it was Costco (not plaintiff) who paid IEEPA tariffs; and the government did not force money out of plaintiff's hands and into Costco's. *See, e.g.*, *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667 (7th Cir. 2001) (a "person

14

who voluntarily pays another with full knowledge of the facts will not be entitled to restitution").

Finally, plaintiff is wrong to suggest that dismissal must await a "full record." Opp. 13. Courts regularly dismiss equitable claims on the pleadings where, as here, the claims fail as a matter of law. *E.g.*, *Cleary*, 656 F.3d at 515-16; *Flores*, 2023 IL App (1st) at ¶ 38.

### 3. Plaintiff fails to state a money had and received claim.

Plaintiff's claim for money had and received fails for many of the same reasons. *See* Mot. 14-15. It fails for the additional reason that plaintiff did not plead the elements of the claim. *Id.* (stating elements); *see also, e.g.*, *Jarman v. Am. Traffic Sols., Inc.*, 2019 WL 2173472, at *5 (S.D. Ill. May 20, 2019) (dismissing claim for failure to allege first element); *Oxford Media Grp., Inc. v. Fam. Worship Ctr. Church, Inc.*, 2017 WL 4164172, at *6 (N.D. Ill. Sept. 20, 2017) (same for failure to allege first and third elements). Plaintiff's failure to respond to this argument in Costco's motion constitutes forfeiture, so this claim should be dismissed with prejudice. *See, e.g.*, *Lauer v. John Paul Mitchell Sys.*, 2025 WL 3485172, at *2 n.3 (N.D. Ill. Dec. 4, 2025).

Plaintiff cites *Kaiser v. Fleming*, 315 Ill. App. 3d 921 (2000), which allowed a claim to proceed absent compulsion, but that case concerned money the plaintiff gave to the defendant under false pretenses. *Id.* at 926. Here, there are no plausible allegations of fraud. Plaintiff did not provide any money to Costco under false pretenses, and Costco did not promise anything to him other than the products he voluntarily purchased and received. Money had and received is not a vehicle for challenging any perceived unfairness with the distribution of money by the federal government. *See Jenkins v. Mercantile Mortg.*, 231 F. Supp. 2d 737, 753 (N.D. Ill. 2002) (claim requires allegation of either compulsion or fraud). The tariff refunds owed to Costco never belonged to plaintiff, and plaintiff has no equitable entitlement to them. *See* Mot. 15.

### CONCLUSION

The complaint should be dismissed with prejudice.

Date:  June 30, 2026

Respectfully submitted,

By:

Brad D. Brian (*pro hac vice*)
Jennifer L. Bryant (*pro hac vice*)
Carl Jiang
Joseph Mantegani (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Tel:    (213) 683-9100
Fax:    (213) 687-3702
Brad.Brian@mto.com
Jennifer.Bryant@mto.com
Carl.Jiang@mto.com
Joseph.Mantegani@mto.com

Elaine J. Goldenberg, P.C. (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, Suite 500E
Washington, D.C. 20001
Tel:    (202) 220-1100
Fax:    (202) 220-2300
Elaine.Goldenberg@mto.com

Christopher B. Wilson
Spencer Gottlieb
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606
Tel:    (312) 324-8400
Fax:    (312) 324-9400
cwilson@perkinscoie.com
sgottlieb@perkinscoie.com

*Attorneys for Defendant Costco Wholesale
Corporation*

16